IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

JEFFREY P. LEPSCH,

                                  Petitioner,                          OPINION AND ORDER

     v.

                                                          17-cv-682-wmc

WILLIAM POLLARD,

                                  Respondent.

Petitioner Jeffery P. Lepsch, through counsel, seeks collateral relief under 28 U.S.C. § 2254 from his 2013 convictions in La Crosse County Circuit Court. Magistrate Judge Crocker entered a report and recommendation ("R&R") that Lepsch's petition be denied on the merits. (Dkt. #38.) Because he has objected to the R&R's "findings or recommendations" (dkt. #40), which the court may "accept, reject, or modify, in whole or in part," my review is *de novo*. *See* 28 U.S.C. § 636(b)(1); *Delgado v. Bowen*, 782 F.2d 79, 82 (7th Cir. 1986). For the following reasons, the court will adopt, as modified, the R&R and deny the petition without an evidentiary hearing. *See Schriro v. Landrigan*, 550 U.S. 465, 474 (2007) (evidentiary hearing is not required where the record precludes habeas relief); *Stechauner v. Smith*, 852 F.3d 708, 721-22 (7th Cir. 2017) (no evidentiary hearing allowed if § 2254(d) bars relief).

BACKGROUND[1]

Lepsch was charged with two counts of first-degree, intentional homicide, one count of armed robbery with use of force, and one count of possession of a firearm by a felon. (Dkt. #38 at 3.)  Before jury selection, prospective jurors had to fill out a questionnaire. (*Id.*)  As relevant here, Question 30 asked them whether they would give a police officer's testimony more, less, or the same credibility as that of other witnesses.  *State v. Lepsch*, 2017 WI 27, ¶ 18.  In answer, jurors J.A. and D.M., who ended up sitting on the jury, answered "more credibility."  *Id.*, ¶ 18 & n.7.  J.A. and D.M. also signed their respective answers to the questionnaire under penalty of perjury.  (Dkt. #38 at 3.)

Ultimately, the jury convicted Lepsch on all counts, *Lepsch*, 2017 WI 27, ¶ 2 n.2, after which the circuit court judge imposed two terms of life imprisonment, 40-years imprisonment on the armed robbery count, and 10-years imprisonment on the firearm count -- all terms to be served consecutively. *Id.*, ¶ 9.  Lepsch filed a postconviction motion for a new trial in the circuit court, which the court denied after holding an evidentiary hearing under *State v. Machner*, 92 Wis. 2d 797. *Id.*, ¶ 10.  At that hearing, defense counsel Vincent Rust testified about the defense's jury selection strategy, explaining that he had deliberately not questioned D.M. about his answer to Question 30 because he had also written that he believed in facts and not people, and so indicated that he "might be favorable" to the defense. (Dkt. #38 at 6-7.)  As for J.A., Attorney Rust noted that he had

---

[1] The court draws these facts from the R&R and the Wisconsin Supreme Court's decision affirming the denial of Lepsch's postconviction motion for a new trial.  Lepsch does not dispute the R&R's description of his claims or statement of the facts and procedure.  Nor does Lepsch dispute the R&R's determination that he abandoned some of the claims on which the court initially allowed him to proceed.  (Dkt. #38 at 1-2 and n.1.)

also written an answer on his questionnaire that he could be impartial, and Attorney Rust

believed from his answers overall that he could be an objective juror.   (*Id.* at 7.)

Accordingly, the state court of appeals affirmed.  *Lepsch*, 2017 WI 27, ¶ 11.

The Wisconsin Supreme Court granted Lepsch's petition for review, *id.,* ¶ 12, where

Lepsch again argued that his jury included biased jurors D.M. and J.A., as well as that

defense counsel Rust was ineffective in failing to question either about their bias or to move

to strike them.   (Dkt. #38 at 8.)   However, the supreme court determined that Lepsch

failed to show any juror who sat on his case was biased, and therefore, also failed to show

that he was prejudiced by Attorney Rust's allegedly deficient performance.  *Lepsch*, 2017

WI 27, ¶ 37.  As did the court of appeals, in reaching this conclusion, the supreme court

reasoned that even though J.A. and D.M. wrote about giving a police officer's testimony

more credibility, "other aspects of the jury selection process" as already discussed above

showed that they were not biased. *Id.* ¶ 28.[2]  Furthermore, the court found significant that

J.A. and D.M. were both present when the jurors were questioned as a group, and Attorney

Rust discussed:  (1) whether the police can make mistakes; (2) whether it is important for

law enforcement to follow procedures; (3) whether the police ever let bias interfere with

what they are looking for; (4) whether people tend to trust the police more than they

should sometimes; and (5) how to determine if a police officer has the right training or

experience. *Id.,* ¶ 29.  Similarly, the court noted, the state's counsel told the prospective

---

[2] For example, the supreme court again noted that:  both J.A. and D.M. checked "No" on the questionnaire next to the question, "Is there any reason why you could not be impartial in this case?"; and elsewhere on his questionnaire, D.M. stated, "I believed in facts, not people." *Id.*

jurors that it wanted people who were fair and objective, then asked the prospective jurors if anyone thought he or she could not be fair, to which no one answered. *Id*.

The Wisconsin Supreme Court also rejected Lepsch's argument that federal law required the circuit court to obtain a "final, unequivocal swearing by a juror that he or she can set aside his or her beliefs and opinions and decide the case solely on the evidence" because J.A. and D.M. wrote that they would give a police officer's testimony more credibility. *Id.* ¶ 33.  Lepsch based this argument primarily on a statement by the United States Supreme Court in *Patton v. Yount*, 467 U.S. 1025 (1984), that "in a 'federal habeas corpus case in which the partiality of an individual juror is placed in issue,'" the question before the reviewing court "'is plainly one of historical fact:  did a juror swear that he could set aside any opinion he might hold and decide the case on the evidence, and should the juror's protestation of impartiality have been believed.'" *Lepsch*, 2017 WI 27, ¶ 33 (quoting *Yount*, 467 U.S. at 1036).  However, the Wisconsin Supreme Court determined that this statement does not "dictate[ ] a bright-line rule [to] be applied in cases involving a defendant's claim [that] he did not receive an impartial jury." *Id*., ¶ 34.  In support, the court noted that despite making that statement in *Yount,* the U.S. Supreme Court went on to reject the view of the lower federal court of appeals that "whether jurors have opinions that disqualify them is a mixed question of law and fact," such that "the presumption of correctness due a state court's factual findings under . . . § 2254(d) does not apply." *Lepsch*, 2017 WI 27, ¶ 34 (quoting *Yount*, 467 U.S. at 1028-31, 1036).

Thus, the Wisconsin Supreme Court concluded the *Yount* court's "focus . . . was not the definition of the substantive standard [regarding juror bias], but instead the notion

that application of the relevant standard was 'not one of mixed law and fact' and that 'the statutory presumption of correctness' thus applied to the trial court's determinations." *Id.* (quoting *Yount*, 467 U.S. at 1036-38).  In addition, the state supreme court emphasized *Yount*'s instruction that the real question on federal habeas review "is whether there is fair support in the record for the state courts' conclusion that the jurors . . . would be impartial," understanding that jurors "cannot be expected to invariably [ ] express themselves carefully or even consistently," and ambiguity alone is insufficient to overcome the presumption that the trial court's finding of a juror's impartiality is correct.  *Id., ¶ 35* (quoting *Yount*, 467 U.S. at 1038-40).  Finally, the supreme court noted that Lepsch had failed to identify any subsequent U.S. Supreme Court case supporting his interpretation of the statement he would emphasize from *Yount*.  *Id.*, ¶ 36.

Before this court, Lepsch contends that:  (1) the empaneling of jurors J.A. and D.M. violated his right to trial by an impartial jury; and (2) Attorney Rust provided ineffective assistance because he failed to obtain an unequivocal declaration of impartiality from J.A. and D.M. or move to strike them for cause, resulting in the seating of biased jurors.  (Dkt. #38 at 10.)  Applying the general standards governing review of § 2254 petitions, Judge Crocker rejected Lepsch's reading of *Yount* and concluded that the U.S. Supreme Court has never established that a trial judge *must* dismiss a juror for cause based on some arguably equivocal answers, if finding them impartial overall.  (*Id.* at 10-16); *see also Cage v. McCaughtry*, 305 F.3d 625, 626 (7th Cir. 2002) (concluding that the Supreme Court has never established that a judge must dismiss a juror who has provided "potentially equivocal assurances of impartiality during *voir dire*," even if no lawyer objects).  Judge Crocker also

determined that the evidence "amply support[ed]" the Wisconsin Supreme Court's conclusion that Lepsch had failed to show that "J.A. or D.M.'s general beliefs about police credibility were so irrational or unshakeable that they would be unable to put them aside and judge the case based on the evidence." (Dkt. #38 at 19.)  As support, the judge relied on much of the same evidence that the state supreme court noted in determining that other aspects of the jury selection process showed that J.A. and D.M. were not biased.  (*See id.* at 2-3.)[3]

## OPINION

### I.  Lepsch's Objections

Lepsch purports to raise seven objections to the R&R, but they largely overlap and can be distilled down to basic objections to its principal determinations that:  (a) the state supreme court did not contradict or unreasonably apply federal law as articulated in *Yount* or in concluding that he had failed to show that J.A. and D.M. were biased; and (b) his trial counsel's decision not to seek more explicit assurances of impartiality from these jurors was entitled to deference under *Strickland v. Washington*, 466 U.S. 688 (1984).  The court will address these objections in turn.

---

[3] The R&R also relied on other of J.A.'s statements in response to questions on other matters, including that he knew his "personal opinions were not consistent with the beyond-a-reasonable-doubt standard" and "he would have to set his opinions aside and decide the case on the evidence presented at trial." (Dkt. #38 at 4 (citing dkt. #13-7 at 50-51).)  Lepsch does not challenge these findings.

### A.      Juror Bias

To begin, Lepsch argues that the U.S. Supreme Court's decision in *Wainwright v. Witt*, 469 U.S. 412 (1985), contradicts Judge Crocker's reading of *Yount*.  However, *Witt* merely clarified that a prospective juror may be excluded for cause based on the juror's view on capital punishment if it "would prevent or substantially impair the performance of his [or her] duties as a juror in accordance with his [or her] instructions and . . . oath." *Id.* at 424.  Far from establishing that a trial court must obtain a sworn declaration from a potentially biased juror, therefore, *Witt* actually reinforces Judge Crocker's conclusion that the party seeking the juror's exclusion under *Yount* "must demonstrate, through questioning, that the potential juror lacks impartiality." *Id.* at 423.  Similarly, while Lepsch contends that several Seventh Circuit cases support his contrary reading of *Yount*, the U.S. Supreme Court's unambiguous holding obviously controls for purposes of § 2254(d)(1) review. *Parker v. Matthews*, 567 U.S. 37, 48 (2012) (per curiam).  Moreover, most of these Seventh Circuit precedents also concluded that the appellant failed to show sufficient bias to void a jury's verdict. *E.g., United States v. Klemis*, 859 F.3d 436, 445-46 (7th Cir. 2017); *United States v. Taylor*, 777 F.3d 434, 441 (7th Cir. 2015); *Marshall v. City of Chicago*, 762 F.3d 573, 576-77 (7th Cir. 2014); *United States v. Allen*, 605 F.3d 461, 465-66 (7th Cir. 2010).  Thus, nothing in these decisions support revisiting the basic burden of proof that Lepsch faced in state court or before Judge Crocker.

 In fairness, the Seventh Circuit did reach an arguably different result in *Thompson v. Altheimer & Gray*, 248 F.3d 621 (7th Cir. 2001), which reversed and remanded for a new trial after a district court failed to obtain assurances that a juror's expressed bias was

"shakable." *Id.* at 626-27.  However, the author of the panel opinion, the Honorable Posner, acknowledged the following year that the Supreme Court has never held that a judge *must* dismiss a juror who has provided "potentially equivocal assurances of impartiality during *voir dire*," especially without objection.  *Cage*, 305 F.3d at 626. Regardless, the R&R correctly noted that the Supreme Court has not established that a trial court must, on its own, obtain sworn declarations of impartiality from jurors who have given arguably ambiguous assurances of impartiality during *voir dire*.

Moreover, the state supreme court reasonably concluded that Lepsch had also failed to show that J.A. and D.M. were biased.  As the R&R explained, the touchstone of impartiality is whether "the juror can lay aside his [or her] impression or opinion and render a verdict based on the evidence presented in court."  *Irvin v. Dowd*, 366 U.S. 717, 723 (1961); *see also Lepsch*, 2017 WI 27, ¶¶ 21, 36.  Here, while J.A. and D.M. initially acknowledged on their questionnaires that they would give police officers' testimony more credibility, each also wrote that there was no reason they could not be impartial.  As D.M. added, "I believe in facts, not people," which suggests a willingness to decide the case on the evidence.  Similarly, J.A. explicitly stated that "he would have to set his opinions aside and decide the case on the evidence presented at trial."  As further noted, both J.A. and D.M. were present when Attorney Rust discussed the importance of not being biased in favor of the police *and* the state similarly stressed that it wanted jurors who could be objective and fair.  All of these undisputed facts support the deference recommended in the R&R to the state courts' determination that J.A. and D.M. could set aside their impressions of police officer credibility and render a verdict based on the evidence.  It also

bears emphasis that the state trial court held a *Machner* hearing before concluding, based partly on Attorney Rust's testimony, that "each juror was able to put any potential biases out of their minds" and "decided the case based solely on the evidence before them." *Lepsch*, 2017 WI 27, ¶ 26; *see also Yount*, 467 U.S. at 1039 ("[the trial] judge … is best situated to determine competency to serve impartially").  Finally, contrary to Lepsch's citations already discussed, the state supreme court's rejection of Lepsch's claim that J.A. and D.M. were biased did not contradict or unreasonably apply clearly established federal law.

       **B.**       **Ineffective Counsel**

As for Lepsch's claim that Attorney Rust ineffectively failed to insist on an unequivocal assurance of impartiality from J.A. and D.M., Lepsch did not object to the R&R's failure to explicitly discuss prejudice, nor to the state supreme court's holding that Lepsch failed to show prejudice.  (*See* dkt. #38 at 17-20.)  Regardless, because the state supreme court reasonably determined that no biased jurors sat on the jury as a matter of fact, Lepsch cannot now show prejudice in his collateral attack on his related ineffectiveness claim.  *See Warren v. Baenen*, 712 F.3d 1090, 1105-06 (7th Cir. 2013).  Finally, for the reasons stated in the R&R, Lepsch's ineffectiveness claim would fail even under *de novo* review, principally because Attorney Rust's strategy in not seeking an unequivocal assurance of impartiality from J.A. or D.M. was reasonable.  (Dkt. #38 at 6-7, 20); *Strickland*, 466 U.S. at 689 ("[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; . . .

[and] the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy.").

## II. A certificate of appealability will not issue

Because Lepsch seeks relief under § 2254, he may appeal this order only if he obtains a certificate of appealability.  The court may issue a certificate of appealability only if Lepsch makes "a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  To obtain a certificate of appealability, Lepsch "must demonstrate that reasonable jurists would find the [ ] court's assessment of the constitutional claims debatable or wrong."  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  For the reasons stated above, the court must deny a certificate of appealability.

### ORDER

IT IS ORDERED that:

1)  The magistrate judge's report and recommendation (dkt. #38) is ADOPTED, as modified.

2)  Petitioner's objections (dkt. #40) are OVERRULED.

3)  Petitioner's petition (dkt. #1) is DENIED, and a certificate of appealability is DENIED.

4)  The clerk of court is directed to enter judgment.

Entered this 26th day of September, 2023.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge